## FENELON VS. HOGOBOOM.

*Sale and delivery. — Conversion. — Presumption in favor of judicial proceedings. — Immaterial error. —Husband and wife. — Stamps.*

1. Where the holder of warehouse receipts for grain, delivered them to the warehouseman in pursuance of a contract to sell him the grain for cash, such delivery of the receipts vested in the warehouseman the title to the grain, subject to a right in the vendor to reclaim the property on refusal of payment.

2. After such refusal to pay, and after demand made for the grain, an action will lie against the warehouseman for its conversion.

3. If the warehouseman, after so receiving the warehouse receipts, voluntarily delivered them to a third party, or permitted them to be taken from his own possession, or if they were taken by force or stolen from him, this did not affect his obligation to pay for the grain under the contract, nor his liability in trover after refusing either to pay or return the property.

4. The warehouseman having paid the vendor when the receipts were so delivered, a portion of the contract price of the grain, the fact that the latter never offered to return the money did not vest in the former the title to the whole property. The grain being divisible, the warehouseman could claim title only to a proportional share thereof, by reason of such part payment; and, never having demanded a return of the money, he must be regarded as retaining title to such share, and the vendor may recover for the conversion of the remainder.

5. The receipts were taken from the warehouseman's possession by an officer under an attachment against the goods of a third person; and in the action against the warehouseman for a conversion of the wheat, he offered in evidence the record in the attachment suit. *Held*, that it was immaterial, unless accompanied by proof that the attachment defendant owned the wheat.

6. Where a judgment record, offered in evidence in a cause and excluded, is not made a part of the bill of exceptions, and such bill, though it shows the objections taken by counsel to such record, does not state on what grounds the court excluded it, this court must *presume* that there were valid reasons on the face of the record for its exclusion.

Fenelon vs. Hogoboom.

7. A married woman may take from her husband a chattel mortgage, to secure the payment of a debt due from him to her upon a sale to him of her separate property. *Beard v. Dedolph*, 29 Wis., 136.

8. An instrument is admissible in evidence notwithstanding the omission therefrom of the stamp required by the revenue laws of the United States, unless such omission is shown to have been fraudulent. *Rheinstrom v. Cone* (26 Wis., 163), and other cases, followed.

9. A judgment will not be reversed for the improper admission of evidence, where the facts shown by it were unimportant, and respondent's right to such judgment was clear upon other and undisputed evidence.

APPEAL from the Circuit Court for *Fond du Lac* County. The action was in the nature of trover, for the alleged unlawful conversion by the defendant of a quantity of wheat belonging to the plaintiff, who was a married woman but claimed the wheat in controversy as a part of her separate estate.

The answer alleged that the defendant was a warehouseman, and as such received the wheat in store from the husband of the plaintiff, and gave him warehouse receipts therefor, the transfer of which was not restricted by having upon them the words "not negotiable," or equivalent words; that the wheat was the property of the husband and not of the plaintiff; that while the same was in store it was attached and taken by the marshal of the city of Ripon, by virtue of a writ of attachment duly issued out of the municipal court of that city, at the suit of one Salisbury, against the goods and chattels, etc., of the husband of the plaintiff; that the warehouse receipts so issued for the wheat had never been presented to the defendant by the plaintiff; that she never held or owned them; and that her husband fraudulently procured them to be issued in the name of the plaintiff.

The undisputed testimony on the trial proved that the plaintiff was the owner of the wheat in her own right; that, acting by her direction and as her agent, her husband stored the wheat in the warehouse of the defendant, and took receipts therefor in her name; that afterwards, under the direction of

the plaintiff, her husband sold the wheat to the defendant, and delivered to him the receipts therefor; that the husband then repaid to the defendant $40, which the latter had previously advanced on the wheat, and the defendant gave it back to him as a part payment for the wheat; that the sale and part payment and delivery of the receipts took place at the defendant's house, and the defendant, after counting the receipts, put them in his pocket, and said to Mr. Fenelon that he wanted to go down town, but would be at the elevator in a few minutes; that soon after they again met at the elevator, when the defendant laid down the receipts to his clerk, whereupon Salisbury (who is probably the person named in the answer) came in and seized the checks; that the defendant thereupon refused to pay for the wheat; and that, on the evening of the same day, on the demand of the plaintiff in person, he refused to deliver to her either the receipts or the wheat. Certain testimony was admitted upon the trial against the objection of the defendant, which is sufficiently stated in the opinion.

The defendant offered in evidence the judgment roll in the attachment suit mentioned in the answer. The evidence was objected to, on the grounds that there was no certificate of the officer that he served a copy of the inventory and appraisal on the defendant in the attachment suit, Mr. Fenelon, and that there was no oath on file of the appraisers of the value of the property. This objection was sustained by the court, and the record excluded. The defendant did not offer any further testimony.

The circuit court directed the jury to return a verdict for the plaintiff, for the sum of $404.92, which was accordingly done; and judgment was afterwards perfected thereupon; from which the defendant appealed.

*Runals & Reed*, for appellant:

1. The plaintiff could not take title to the wheat directly from her husband. R. S., ch. 95, sec. 3; 18 Wis., 333. 2. The evidence showed a sale to the defendant, and therefore an ac-

Fenelon vs. Hogoboom.

tion for a wrongful conversion cannot be maintained. Under a judgment in such an action the defendant would be liable to imprisonment for a mere debt. Const., art. I., sec. 16; 38 N. Y., 206. The plaintiff did not attempt to annul the contract, nor offer to refund the money paid as part payment on the purchase. The defendant was justifiable in refusing to pay for the wheat after it had been attached and seized by the officer, until the rights of the parties in the attachment suit were settled. 25 Wis., 636; 4 Abb. Pr. R. (N. S.), 316; 35 How. Pr. R., 596. 3. A demand and refusal is not a conversion, but at most is merely evidence of one. 28 Barb., 75; *Garvin v. Suttrell*, 10 Humph., 16. If the defendant owned the wheat, or if the officer had got it so that he could not deliver it, he is not liable for a conversion. *Verrall v. Robinson*, 5 Tyr., 1069; *Hill v. Covell*, 1 Coms., 522; *Wilde v. Waters*, 32 Eng. L. & Eq., 422. No conversion to defendant's own use or with wrongful intent, was proved. 2 Hilliard on Torts, 254–6. 4. It was error to admit the chattel mortgage in evidence, it not being stamped; and it was also error to admit parol proof of entries made in defendant's books. 5. The judgment record ought to have been admitted. The defendant ought not to be prejudiced by trivial errors of an officer, not acting by his procurement or direction.

*G. T. Thorn* and *N. S. Gilson*, for respondent:

1. The defendant, by colluding with the attachment creditor to have the certificates seized and wheat attached, voluntarily took upon himself the burden of showing the plaintiff's title to be fraudulent. The demand and refusal fixed his liability for a conversion. 2. The answer does not set up any facts that would authorize the introduction of any proof of the attachment as a justification. It merely alleges a conclusion of law, that the wheat "was duly attached." *McCarty v. Gage*, 3 Wis., 404. 3. The evidence that the plaintiff had money in her own right and lent it to her husband, is clear, and she could hold the money or property voluntarily paid by him on such loan, as against

him and his creditors.   *Feller v. Alden*, 23 Wis., 301; *Hannan v. Oxley*, id., 519; *Vrooman v. Griffiths*, 1 Keyes, 53; *Savage v. O'Neil*, 44 N. Y., 298.   4. The judgment record in the attachment suit, if admitted in evidence, would not have been material, because there was no proof that the sale of the wheat to the plaintiff was fraudulent.   This court must presume that it was rightly excluded, there being nothing in the bill of exceptions to show error.   5. There was no attachment, the officer having failed to serve a copy of the inventory and appraisal; and if there had been, the plaintiff was not bound by the proceedings, not being a party.   *Whitney v. Brunette*, 15 Wis., 61.   6. There was no sale of the wheat to the defendant.   He had merely a lien for advances, and he waived that by placing his refusal to deliver on other grounds.   1 Campb., 410, note: *Clark v. Chamberlain*, 2 Mees. & W., 78; *Wilson v. Anderton*, 1 Barn. & Ad., 450; *West v. Tupper*, 1 Bailey (S. C.), 193.   7. The admission of the chattel mortgage did not prejudice the defendant, the plaintiff's title having been clearly established without it.

LYON, J.   I. In the contract for the sale of the wheat to the defendant, there was no stipulation that any credit should be given for the price.   The evidence shows that a cash sale thereof was contemplated and intended by the parties.   Such being the case, it was the right of the plaintiff to demand payment immediately upon the delivery of the wheat.   When the agent and husband of the plaintiff delivered to the defendant the warehouse receipts for the wheat, he, by that act, delivered to him the wheat for which those receipts were given; but such delivery was subject to the plaintiff's right to reclaim the wheat after payment therefor was refused.   Whatever title passed to the defendant by virtue of such delivery, was divested by his refusal to pay for the wheat; and, after demand for the wheat (which was made on the day of such delivery and refusal to pay therefor), the defendant not delivering the same, the plaintiff's right of action against him for a conversion of

the wheat became perfect. These principles are held in the case of *Goldsmith v. Bryant*, 26 Wis., 34, which in many of its features is quite like this case. See also *Mathews v. Cowan*, 4 Chicago Legal News, No. 188, p. 233.

II. The plaintiff did not offer to return the $40, paid on account of the purchase of the wheat, when she demanded the same, or at any other time. The fact that she retains that money certainly does not vest in the defendant a title to all of the wheat. The wheat being in its nature divisible, it gives him a good title to the number of bushels that the money paid for at the contract price, and left the plaintiff, after such demand and refusal, the owner, and entitled to the possession of the residue thereof.

It is worthy of remark in this connection, that the defendant did not ask the plaintiff to repay the $40, neither did he put his refusal to deliver the wheat on the ground that she had not repaid the same, but he seems to have refused to pay for the wheat or to re-deliver the same to the plaintiff on the sole ground of her inability to surrender the warehouse receipts which he had given therefor. It is reasonable to infer from these facts that the defendant was content to take the wheat for which he had paid, instead of requiring a return of the money.

III. There is no force whatever in the objection that plaintiff was unable to surrender the warehouse receipts when she demanded payment for the wheat, or when she demanded the wheat itself. She had previously delivered those receipts to the defendant, and if he suffered them to go out of his hands, either voluntarily or by his own negligence, or if they were stolen, or taken from him by force, without the fault of the plaintiff, that is the misfortune of the defendant, and cannot affect the rights of the plaintiff.

IV. The judgment record which the circuit court excluded is not made a part of the bill of exceptions, and is not before us. Although the bill of exceptions states the grounds upon

which the objection to its admission were based, it does not state the grounds upon which the court excluded it. All reasonable presumptions must be made in favor of the correctness of the decision of the court, and we must presume that there were good and valid reasons for excluding that record, apparent upon the face of it. It is not necessary, therefore, to consider whether the objections taken thereto by counsel were well taken or otherwise.

As the proofs stood when this record was offered, it was entirely immaterial to the case, unless followed by proof that the defendant in the attachment suit, and not the plaintiff, was the owner of the wheat. No testimony tending to prove his ownership thereof was offered, and no intimation appears to have been given on the trial that it was proposed by the defendant to introduce any such testimony.

V. The husband of the plaintiff was examined as a witness, and, after testifying that he took the wheat to the defendant's warehouse by direction of the plaintiff, and by her direction also took the receipts therefor in her name, was interrogated by the counsel for the plaintiff, as follows: "How were the books kept?" Under objection and exception by the defendant, he answered. "The understanding was with *Hogoboom* that I was to put the wheat in under the chattel mortgage, and the entry was made in the book that the wheat was going in under the chattel mortgage." The question and answer are supposed to relate to the defendant's account books. Of course, it was irregular to admit parol testimony of the contents of those books, until a proper foundation had been laid therefor, which was not done. But the testimony thus improperly admitted, as the case stood and as it now stands, was not of the slightest importance. It was proved that the plaintiff owned the wheat, and that the receipts therefor were issued to her, and testimony as to what entries of the storage transaction the defendant made in his books could not aid or injure either party to the action. Hence the error is not sufficient to work a reversal of the judgment.

VI. It appears that, while the wheat was growing, the husband of the plaintiff, being indebted to her, gave her a chattel mortgage on the crop, and that the same had no internal revenue stamp affixed to it as required by the laws of the United States. This mortgage was offered and read in evidence on the trial, against the objection of the defendant thereto, made upon the ground that the same was not duly stamped.

It was competent for the plaintiff to take a chattel mortgage from her husband to secure a debt which he owed, and which was contracted on the account of her separate property. *Beard v. Dedolph*, 29 Wis., 136. In the absence of proof that the stamp was fraudulently omitted, we have held in several cases that the instrument may properly be read in evidence. *Rheinstrom v. Cone*, 26 Wis., 163; *Grant v. The Connecticut Mutual Life Ins. Co.*, 29 id., 129; *Timp v. Dockham*, id., 440.

But the chattel mortgage does not seem to be of much importance in the case, after the property had gone into the hands of the mortgagee. Her title would seem to be equally as good, without the mortgage as with it.

Upon examination of the whole case we find no error that requires us to reverse the judgment appealed from.

*By the Court.*— The judgment of the circuit court is affirmed.